The Honorable John C Coughenour

CC TO JUDGE DJ

✓ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

JAN 24 2002   DJ

AT SEATTLE
CLERK U.S DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RUTH TREVINO LOPEZ, individually as surviving spouse, and as personal representative of the ESTATE OF BLAS ANTONIO LOPEZ, and beneficiaries, heirs, and surviving children BLAS LOPEZ, JR , EDGAR LOPEZ, YULIKSA LOPEZ and ALEXANDER LOPEZ,<br><br>Plaintiffs,<br><br>vs<br><br>UNION PACIFIC RAILROAD COMPANY and BOISE CASCADE CORPORATION,<br><br>Defendants | NO. C00-0311C<br><br>PLAINTIFFS' **THIRD** MOTION FOR SANCTIONS AGAINST DEFENDANT UNION PACIFIC RAILROAD AND SUPPLEMENTAL EVIDENCE RE PENDING MOTIONS FOR SANCTIONS<br><br>**NOTED: February 8, 2002 [ORAL ARGUMENT REQUESTED]** |

CV 00-00311  #00000190

PLAINTIFFS' **THIRD** MOTION FOR
SANCTIONS AGAINST DEFENDANT UNION
PACIFIC RAILROAD & SUPPLEMENTAL
EVIDENCE RE PENDING MOTIONS FOR
SANCTIONS – 1

**CARNEY BADLEY SMITH & SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
2200 BANK OF AMERICA TOWER
700 FIFTH AVENUE, SUITE 5800
SEATTLE, WA 98104-5017
FAX (206) 467-8215
TEL (206) 622-8020

lop006 0001 da225101 1/24/02

190

## I.   BACKGROUND

Plaintiffs Lopez have two Motions for Sanctions against Union Pacific pending before the Court (Docket Nos 118 and 169) Plaintiffs have discovered that Union Pacific has destroyed, or lost, another piece of critical evidence Again a Union Pacific manager is involved, as is the Union Pacific Claims Department In addition, plaintiffs offer further proof which supports plaintiffs' assertions made in the two earlier Motions for Sanctions, and in this Motion, that Union Pacific routinely destroys, loses or refuses to produce discoverable evidence

The evidence which is the subject of this motion is the event recorder data from the second locomotive (UP 9184) powering the train that collided with Blas Lopez' truck The evidence is critical because if plaintiffs had it, they could prove that the train was probably going faster than Union Pacific contends

## II.   STATEMENT OF FACTS

Among other things, an event recorder measures and records the speed of a train The event recorder from the second locomotive (UP 9184) was apparently downloaded by Chuck Harrison, Union Pacific's <u>Manager</u> of Operating Practices Mr Harrison admits that both the Federal Railroad Administration and Union Pacific's rules require that <u>all</u> data event recorders be downloaded after crossing accidents (Dep of C Harrison, p 10 18-25, Exhibit 1 to Dec of N Scarpelli) Mr Harrison's personal calendar reflects that he downloaded the event recorder from the second locomotive He now claims he cannot remember actually doing so (Id , pp 11 4 – 12 12) It is Mr Harrison's practice to examine the readings of the event recorder right after

PLAINTIFFS' <u>THIRD</u> MOTION FOR
SANCTIONS AGAINST DEFENDANT UNION
PACIFIC RAILROAD & SUPPLEMENTAL
EVIDENCE RE PENDING MOTIONS FOR
SANCTIONS – 2

**CARNEY
BADLEY
SMITH &
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
2200 BANK OF AMERICA TOWER
700 FIFTH AVENUE, SUITE 5800
SEATTLE, WA 98104-5017
FAX (206) 467-8215
TEL (206) 622-8020

lop006 0001 da225101 1/24/02

downloading (Id., at pp 16 9 – 17 8) Thus he would have seen what speed the event recorder of the second locomotive (UP 9184) actually recorded, i e, whether it recorded a higher speed than 42 mph "Ninety-nine percent" of the time he actually prints out a graph that shows the recorded speed (Id., at pp 18 3-22) Mr Harrison's practice is to place the disk in a special envelope requiring certain chain of custody information A copy of the chain of custody envelope containing the disk from the <u>first</u> locomotive (UP 9123) is attached as Exhibit 2 to the Declaration of Nick Scarpelli Mr Harrison would then hand deliver the envelope to Stan Fetterhoff, the Claims Agent investigating and preserving evidence for possible litigation Union Pacific procedure requires Mr Fetterhoff to sign the chain of custody form on the envelope before Mr Harrison turns it over to him (Id., at pp 23 19 – 25 4) Obviously, Union Pacific knows event recorder data is critical evidence

Plaintiffs first requested event recorder data from <u>all</u> locomotives on March 29, 2000 On May 26, 2000, in response to this discovery request as to the second locomotive, Union Pacific produced event recorder data for a locomotive not involved in the accident, UP 1581 [1]

It is undisputed that the maximum track speed allowed by FRA regulations for this track is 40 mph It is also undisputed that the PMD-2 signal system at this crossing was set to activate (warn) based on a train speed of 40 mph The faster the train, the shorter the signal activation time

---

[1] Plaintiffs' First Requests for Production, No 8, (with answer) states "Produce the data event recorder **printout(s)** from all locomotive(s) involved in the **accident** at issue This request should include all available print-out version of the event recorders including, but not limited to, tabular data, compressed, super expanded and expanded, strip charts, all from the moment the crew involved in the **accident** at issue boarded the train until point of final destination for that particular crew, in so producing, also make available for inspection, copying and review the actual data pack(s) and any other original means of storage of all data generated by the data event recorders at issue **Response: See attached**"

PLAINTIFFS' **THIRD** MOTION FOR
SANCTIONS AGAINST DEFENDANT UNION
PACIFIC RAILROAD & SUPPLEMENTAL
EVIDENCE RE PENDING MOTIONS FOR
SANCTIONS – 3

**CARNEY**
**BADLEY**
**SMITH &**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
2200 BANK OF AMERICA TOWER
700 FIFTH AVENUE, SUITE 5800
SEATTLE, WA 98104-5017
FAX (206) 467-8215
TEL (206) 622-8020

lop006 0001 da225101 1/24/02

before the train arrives at the crossing As the Court has seen, the event recorder from the lead locomotive (UP 9123) recorded a speed of 41-42 mph for approximately a mile before the impact According to Union Pacific's expert, an event recorder has a margin of error of two miles per hour, although it can be greater (Dep of B Heikkila, p 43 7-25, Exhibit 3 to the Dec of N Scarpelli) Thus, the train which collided with Blas Lopez' truck could have been traveling four miles per hour over the maximum track speed, or faster, causing an even shorter warning time Given the fact that Union Pacific had defective, unmodified PMD modules in the signal system which caused short warning times, (*see* Plaintiffs' Second Motion for Sanctions), any increase in speed would compound the short warning dangers, and the other hazards already existing at the crossing

Union Pacific may argue that the train was going 40 mph, *i e*, within the two miles per hour margin of error their expert has described If the event recorder data from the second locomotive (UP 9183) were available, it could confirm the illegal 42 mph speed recorded by the first locomotive (UP 9123), or it could show the train was traveling even faster But plaintiffs will not be able to put this evidence before the jury because Union Pacific now claims it cannot find the event recorder data from the second locomotive

Plaintiffs provide the Declaration of Illinois attorney Charles Armbruster, III, and excerpts from the deposition of Union Pacific Manager of Operating Practices, Randy Eardensohn, sworn to in the federal district court case of *Hammer v. Union Pacific*, involving a train derailment, where the event recorder provided data as to the excessive forces that may have caused the derailment Mr Eardensohn admits he "threw [the event recorder] away," despite basing his opinion, in part, on what appeared on

PLAINTIFFS' **THIRD** MOTION FOR
SANCTIONS AGAINST DEFENDANT UNION
PACIFIC RAILROAD & SUPPLEMENTAL
EVIDENCE RE PENDING MOTIONS FOR
SANCTIONS – 4

**CARNEY BADLEY SMITH & SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
2200 BANK OF AMERICA TOWER
700 FIFTH AVENUE, SUITE 5800
SEATTLE, WA 98104-5017
FAX (206) 467-8215
TEL (206) 622-8020

lop006 0001 da225101 1/24/02

the event recorder (Dep of R. Eardensohn, p 5 1-9, pp 18 14 - 19 4, pp 38 15 – 39 7, taken in the case of *Hammer v. Union Pacific*, USDC for the Eastern Dist of Oklahoma, attached to the Dec of C Armbruster filed in support of Plaintiffs Lopez Third Motion for Sanctions )

Plaintiffs also provide the Declaration of Louisiana attorney Elizabeth Hardy describing her practice since 1992 of requesting event recorders and dispatch tapes from Union Pacific She reports her experience where Union Pacific does not produce event recorder data from <u>all</u> locomotives, and irregularities in production of the same Ms Hardy's Declaration also makes clear that Union Pacific's failure to preserve evidence it knows is discoverable is not an isolated incident

The second deposition of Robert Ryan was taken on January 14, 2002 He had his personal attorney present, paid for by Union Pacific (Dep of R Ryan, Vol II, pp 7 11 – 8 5, Exhibit 4 to the Dec of N Scarpelli) Ryan testified that he switched the unmodified boards at 6 00 a m on the morning of October 19, 2001, and did his tests as quickly as possible so he would not be seen (Id , at pp 46 14 – 47 4) Exhibit 4 to Dec of N Scarpelli) Though he knew that the potentially defective capacitors could have been inspected for defects, he did not ask Harmon Industries to do so when he sent them in for modification (Id , at pp 87 14 – 88 2) He has received no reprimand from Union Pacific (Id at p 10 4-10) Indeed, the company provided him with private counsel at its expense In fact, after Ryan was caught, he reported to his supervisor in charge of the Western United States, Dale Hughes He told Hughes what he had done snuck out early in the morning to

PLAINTIFFS' **THIRD** MOTION FOR
SANCTIONS AGAINST DEFENDANT UNION
PACIFIC RAILROAD & SUPPLEMENTAL
EVIDENCE RE PENDING MOTIONS FOR
SANCTIONS – 5

**CARNEY
BADLEY
SMITH &
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
2200 BANK OF AMERICA TOWER
700 FIFTH AVENUE, SUITE 5800
SEATTLE, WA 98104-5017
FAX (206) 467-8215
TEL (206) 622-8020

lop006 0001 da225101 1/24/02

switch out defective signal components before an inspection by plaintiffs' expert. Mr Hughes apparently approved of Ryan's actions, or gave Ryan that impression. (Id., at p 11 13-25)

### III. AUTHORITY AND ARGUMENT

The law regarding spoliation of evidence has already been thoroughly briefed by the parties. Plaintiffs will not again restate their legal theories for relief, but rather rely on their previous legal arguments on these matters.

The practice of Union Pacific of failing to preserve evidence it knows is discoverable, and which plaintiffs' counsel routinely request, and destroying evidence it knows is harmful to its interest, is established in the affidavits of attorneys provided in support of Plaintiffs' First and Third Motions for Sanctions, and is obviously happening in the instant case before this Court.

Plaintiffs Lopez do not casually make assertions of company-wide, repeated failures to preserve or produce discoverable evidence. The fact that Federal District Court Judge, Hon. William R Wilson, Jr., sanctioned Union Pacific in the *Stevenson v Union Pacific* case demonstrates that these are not groundless allegations. Likewise, the opinion in *Johnson v Missouri Railroad Company, d/b/a Union Pacific Railroad*, 792 So 2d 892 (La App 3rd Cir, 2001, *writ denied* December 7, 2001), describes the familiar pattern of behavior by Union Pacific designed to prevent the discovery of evidence. The *Johnson* opinion, attached, bears quoting at length

> The plaintiffs specifically asserted that the defendants' failure to preserve evidence in their possession impacted their ability to prove liability, and the record contains a factual basis for that assertion. Less than one month after the accident, the plaintiffs

PLAINTIFFS' **THIRD** MOTION FOR SANCTIONS AGAINST DEFENDANT UNION PACIFIC RAILROAD & SUPPLEMENTAL EVIDENCE RE PENDING MOTIONS FOR SANCTIONS – 6

CARNEY BADLEY SMITH & SPELLMAN

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
2200 BANK OF AMERICA TOWER
700 FIFTH AVENUE, SUITE 5800
SEATTLE, WA 98104-5017
FAX (206) 467-8215
TEL (206) 622-8020

lop006 0001 da225101 1/24/02

filed suit and began the discovery process Included within the discovery requests were requests that specific items of evidence be preserved Additionally, on January 30, 1997, the plaintiffs' counsel wrote Ronald J Fiorenza, an Alexandria, Louisiana attorney who often represented Union Pacific, and requested that certain items of evidence be preserved Fiorenza forwarded the letter to Union Pacific's general counsel

The record establishes that railroad companies are required to maintain certain instruments in their locomotives or on their tracks for the purpose of recording particular forms of data during the operation of the train Each locomotive is to have an operating event recorder which provides such information as train speed, direction of travel, time, distance, and horn operation Additionally, audio tape recorders preserve the conversations that transpire internally between the members of the crew as well as between the crew and the company dispatcher Repair, inspection, and accident reports preserve information which would obviously be helpful in confirming or rejecting conflicts in oral testimony Despite the repeated requests for preservation and demands for production, Union Pacific failed to produce any of this evidence

Given the fact that train speed, action or inaction of the train crew, emergency sight distances, and horn operation were all factual disputes critical to the question of liability, a trier of fact could easily conclude that Union Pacific negligently or intentionally failed to preserve this evidence to the detriment of the plaintiffs The conflicting responses to discovery give credence to this argument as well Initially, Union Pacific responded to the plaintiffs' discovery requests by asserting that the event recorder did not exist Later, that response was changed to suggest that, although the event recorder was on the train, no employee present at the accident scene could download the data recorded

The testimony of the various railroad officials and employees concerning knowledge of the plaintiffs' requests that the evidence be preserved is suspect particularly when one considers that the documents important to Union Pacific's defense seemed to always be available Union Pacific's explanation for its failure to produce the evidence ranged from complaints concerning the volume of

PLAINTIFFS' **THIRD** MOTION FOR
SANCTIONS AGAINST DEFENDANT UNION
PACIFIC RAILROAD & SUPPLEMENTAL
EVIDENCE RE PENDING MOTIONS FOR
SANCTIONS – 7

**CARNEY**
**BADLEY**
**SMITH &**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
2200 BANK OF AMERICA TOWER
700 FIFTH AVENUE, SUITE 5800
SEATTLE, WA 98104-5017
FAX (206) 467-8215
TEL (206) 622-8020

lop006 0001 da225101 1/24/02

discovery requests to its difficulties in keeping records because of an ongoing merger with another railroad at the time. Hugh McGhee, Union Pacific's senior claims representative, testified that even where a train had been involved in an accident, maintenance reports would have only been kept thirty days, and all of the other requested data would have been kept no more than 120 days.

At a bench conference held outside the hearing of the jury, the trial court expressed its concern with the defendants' inability to produce the requested evidence. The trial court stated that **"it's becoming more and more obvious to the Court that either the railroad is actively engaging in behavior to prevent the discovery of certain evidence or the record keeping is so lacking that it almost rises to the level (interrupted)."[2]**

[Emphasis added]

## RELIEF REQUESTED

Plaintiffs Lopez renew their previous requests for relief to the Court set forth in their Second Motion for Sanctions.

1. An order striking Union Pacific's liability witnesses as contemplated by Fed. R. Civ. Proc. 37(b)(2).

2. An order striking Union Pacific's defenses and establishing liability in plaintiffs' favor as against Union Pacific.

---

[2] It should be noted that the *Johnson* opinion also undoes Union Pacific's argument in its Memorandum in Opposition to Plaintiffs' Motion for Sanctions (Docket No. 148), and the Declarations of Messrs. Seidler and Houck (Docket Nos. 151 and 152) that the passage of time between the accident and plaintiffs' request for the dispatch tapes excuses their non-production. In *Johnson*, the request for dispatch tapes was made **20** days after the accident, and actually forwarded to Union Pacific's general counsel. Still the dispatch tapes were not produced.

PLAINTIFFS' **THIRD** MOTION FOR
SANCTIONS AGAINST DEFENDANT UNION
PACIFIC RAILROAD & SUPPLEMENTAL
EVIDENCE RE PENDING MOTIONS FOR
SANCTIONS – 8

**CARNEY
BADLEY
SMITH &
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
2200 BANK OF AMERICA TOWER
700 FIFTH AVENUE, SUITE 5800
SEATTLE, WA 98104-5017
FAX (206) 467-8215
TEL (206) 622-8020

lop006 0001 da225101 1/24/02

3  An order excluding any testimony that the destroyed PMD-2 modules were not defective

Plaintiffs further request that the Court enter an order requiring Union Pacific to pay $5,000,000 in sanctions within thirty days from the date of the Court's order

If the Court concludes that the plaintiffs' requests for relief set forth above are not appropriate, then plaintiffs request relief as set forth in their First Motion for Sanctions

1  Instructions to the jury that Union Pacific destroyed evidence it should have preserved and that the jury may presume that such evidence would have been adverse to Union Pacific and favorable to plaintiffs  Plaintiffs request that the Court apply the instruction to the missing event recorder from the second locomotive

Plaintiffs further request that the Court order Union Pacific to pay sanctions of $5,000,000 within thirty days of the Court's order  Plaintiffs had earlier requested sanctions of $500,000 when Union Pacific's spoliation appeared to be an isolated incident  It is now apparent that it is not an isolated incident, but rather one of many recognized by courts and lawyers throughout the Country  The sheer number of these events at best demonstrate a company-wide disregard for the judicial process, and at worst appear intended to subvert it  This sanction will assure that steps are taken by Union Pacific to preserve, not destroy, evidence

Plaintiffs Lopez are unable to offer evidence critical to their case, evidence Union Pacific recognized to be critical, but discarded  A sanction of $5,000,000 is appropriate given the

PLAINTIFFS' **THIRD** MOTION FOR
SANCTIONS AGAINST DEFENDANT UNION
PACIFIC RAILROAD & SUPPLEMENTAL
EVIDENCE RE PENDING MOTIONS FOR
SANCTIONS – 9

CARNEY
BADLEY
SMITH &
SPELLMAN

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
2200 BANK OF AMERICA TOWER
700 FIFTH AVENUE, SUITE 5800
SEATTLE, WA 98104-5017
FAX (206) 467-8215
TEL (206) 622-8020

lop006 0001 da225101 1/24/02

1  defendant's conduct   This is particularly so, given the future harm that will surely be done by

2  Union Pacific if its behavior goes unchecked

3      DATED this 24th day of January, 2002

4

5                                  CARNEY BADLEY SMITH & SPELLMAN, P S

6

7  By _____
      Nicholas P Scarpelli, Jr , WSBA No 5810

8        Roger A Felice, WSBA No 5125
      Attorney for Plaintiffs Lopez

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PLAINTIFFS' **THIRD** MOTION FOR SANCTIONS AGAINST DEFENDANT UNION PACIFIC RAILROAD & SUPPLEMENTAL EVIDENCE RE PENDING MOTIONS FOR SANCTIONS – 10

**CARNEY BADLEY SMITH & SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
2200 BANK OF AMERICA TOWER
700 FIFTH AVENUE, SUITE 5800
SEATTLE, WA 98104-5017
FAX (206) 467-8215
TEL (206) 622-8020

lop006 0001 da225101 1/24/02

792 So 2d 892  
(Cite as: 2001-0980 (La.App 3 Cir. 7/25/01), 792 So.2d 892)

Page 1

**H**

Court of Appeal of Louisiana,  
Third Circuit

Nicole D. JOHNSON, et al.,  
v.  
MISSOURI PACIFIC RAILROAD CO. d/b/a  
Union Pacific Railroad Co , et al

No. 00-0980-CW.

July 25, 2001

Motorist brought negligence action against railroad company and engineer after motorist's vehicle was hit by company's train as motorist attempted to cross railroad tracks The Thirty-third Judicial District Court, Parish of Allen, No C-97-060, Joel Gerard Davis, J , granted motorist's motion for a new trial after a jury found defendants were without fault Defendants applied for supervisory writ The Court of Appeal denied application Defendants filed an appeal for supervisory writ The Supreme Court, 774 So 2d 987, remanded the matter to the Court of Appeal for briefing, argument and rendering of an opinion The Court of Appeal, Peters, J , held that (1) jury instructions did not allow jury to conduct meaningful deliberations, and (2) motorist stated actionable claim for failure to preserve evidence

Writ denied

West Headnotes

[1] Appeal and Error ⊜23  
30k23

Appellate courts generally will not exercise supervisory jurisdiction unless an error in the trial court's ruling will cause the petitioner irreparable injury or an ordinary appeal does not afford an adequate remedy LSA-Const Art 5, § 10

[2] Appeal and Error ⊜977(1)  
30k977(1)

[2] Appeal and Error ⊜977(3)  
30k977(3)

[2] Appeal and Error ⊜977(5)  
30k977(5)

[2] New Trial ⊜13  
275k13

A trial court has virtually unlimited discretion to grant a new trial when it is convinced that a miscarriage of justice has resulted, and, unless an abuse of discretion can be demonstrated, a trial court's action in granting or denying a new trial on discretionary grounds will not be reversed, however, granting a new trial must be exercised with considerable caution, for a successful litigant is entitled to the benefits of a favorable jury verdict LSA-C C P arts 1972, 1973

[3] New Trial ⊜163(1)  
275k163(1)

In granting a new trial, it is necessary for the trial judge to state an articulable reason or reasons as to why he is exercising his discretionary powers LSA-C C P arts 1972, 1973

[4] New Trial ⊜39(6)  
275k39(6)

[4] New Trial ⊜41(3)  
275k41(3)

Trial court did not abuse its discretion in granting a new trial in motorist's negligence action against railroad company and engineer, where jury instructions that did not allow jury to conduct meaningful deliberations could have impacted jury's conclusion in finding defendants were not at fault LSA-C C P arts 1972, 1973

[5] Torts ⊜13  
379k13

In negligence action brought by motorist against railroad company and engineer, motorist stated actionable claim for failure to preserve evidence, company failed to comply with repeated preservation requests, company's inspection and accident reports would have been helpful in confirming or rejecting conflicts in oral testimony, and the testimony of various railroad officials and employees concerning the knowledge of motorist's request that evidence be preserved was suspect  
**\*\*893** David Andrew Fraser, Attorney at Law, Lake Charles, LA, Counsel for Defendants/Applicants Missouri Pacific Railroad Co d/b/a Union Pacific Railroad and Nathan Krig

Elizabeth Sheridan Hardy, Thomas & Hardy, Lake Charles, LA, Kenneth Ray Rush, Attorney at Law,

792 So 2d 892  
(Cite as: 2001-0980 (La App. 3 Cir. 7/25/01), 792 So.2d 892, **893)

Page 2

Oakdale, LA, Counsel for Plaintiffs/Respondents Nicole D Johnson, Nicholas Johnson, Logan Johnson

Court composed of SYLVIA R COOKS, BILLIE COLOMBARO WOODARD, and JIMMIE C PETERS, Judges

*1 PETERS, J

The matter before us is a writ application that has been remanded to this court by the Louisiana Supreme Court for filing of briefs, oral argument, and issuance of an opinion. In the writ application the defendants, Union Pacific Railroad Company (**894 Union Pacific) [FN1] and Nathan Krig, seek to reverse the trial court's grant of a new trial to the plaintiffs, Nicole and Timothy L Johnson. For the following reasons, we deny the writ application and remand the matter to the trial court for a new trial

> FN1 The original petition named Missouri Pacific Railroad Company, d/b/a Union Pacific Railroad, as one of the defendants. However, the railroad company answered only as Union Pacific Railroad Company, and the litigation has proceeded against that entity only. Therefore, we will refer to the defendant railroad company in this opinion as Union Pacific Railroad Company

## DISCUSSION OF THE RECORD

The litigation arises from a January 10, 1997 accident involving a vehicle driven by Nicole Johnson and a train owned by Union Pacific and operated by its engineer, Nathan Krig. The lead locomotive pulling the Union Pacific train struck Ms Johnson's vehicle as she attempted to cross the railroad tracks where they intersect 7th Avenue in Oakdale, Louisiana. Ms Johnson sustained personal injuries as a result of the accident, as did her two minor children, Nicholas and Logan Johnson. She, together with her husband, Timothy L Johnson, brought suit against Union Pacific and Mr Krig to collect for their damages as well as for those of their minor children

Seventh Avenue runs east and west in Oakdale and intersects the railroad tracks at a ninety degree angle U S Highway 165 runs north and south through Oakdale, lies immediately west of the railroad tracks, and runs parallel to the railroad tracks. Thus, after a person traveling west on 7th Avenue traverses the railroad tracks, he or she immediately encounters the intersection of 7th Avenue and U S Highway 165

That intersection is controlled by a red light

*2 Immediately before the accident, Ms Johnson was traveling west on 7th Avenue toward the U S Highway 165 intersection, and the Union Pacific train was traveling south. Because the control signal at the approaching intersection had cycled to red for traffic approaching on 7th Avenue, Ms. Johnson found herself trapped on the railroad track, unable to go forward or backward. Before she could extricate herself from the tracks, the locomotive pulling the Union Pacific train struck her vehicle. In the initial suit filed January 29, 1997, the plaintiffs asserted that the crossing was unsafe because it lacked adequate warnings and because Union Pacific failed to properly maintain it for the public's safety, and that operator fault and Union Pacific's failure to properly train and supervise its employees were also causation factors in the accident. On May 7, 1998, the plaintiffs supplemented their original petition to assert a cause of action for spoliation of evidence, or Union Pacific's failure to preserve certain evidence. A jury trial on the merits began on June 28, 1999, and ended with a July 6, 1999 verdict favorable to the defendants. The litigation is before us because of a misunderstanding between the trial court and the litigants over objections to the jury instructions

On Friday, July 2, 1999, the trial court instructed attorneys for the litigants to meet over the weekend and attempt to reach an agreement concerning the text of the final jury instructions. As a guide for the deliberations, the trial court supplied the attorneys with a copy of its proposed instructions which were nothing more than the trial court's standard jury instructions with some modification based on the particulars of a train-vehicle accident. On Tuesday of the next week, the trial court and the attorneys met in conference to discuss the text of the final jury instructions **895 During the conference, certain modifications were made to the proposed jury *3 instructions. However, although each side had presented proposed special jury instructions for consideration by the trial court, the attorneys did not raise the inclusion or exclusion of these special instructions as an issue at this conference. Immediately after the conference, the trial court charged the jury, using its basic instruction as modified during the conference. Additionally, the trial court supplied the jury with interrogatories to be answered in rendering its verdict, but the verdict interrogatories failed to mention the plaintiffs' cause of action for spoliation of evidence

After the jury retired to deliberate, the litigants confronted the trial court with a number of objections to the jury instructions In response to the objections, the trial court made the following statement

> [C]orrect me if [I am] wrong and maybe everyone was under the wrong impression, but I thought that I had instructed the parties to take the charges as proposed, take them back and try to put all of the charges that you could into the-into the instructions and then call to my attention prior to my charging the jury any which you were unable to agree on

In response, the attorneys for both sides in the litigation informed the court that they misunderstood his directive and thought that they were to reserve their right to object to the trial court's failure to include certain proposed jury instructions Recognizing that a critical misunderstanding had occurred, the trial court responded as follows

> Well, it was late Friday and I apologize if my directive wasn't clear I had hoped in our charge conference that we would discuss each and every charge and it was my understanding, the only one that was brought up was train speed So we'll see what happens Certainly, I would have considered putting those in the charge, but I guess that will be water under the bridge All right Court will be in recess

The jury deliberated for only a short period of time, and in the early afternoon of July 6, returned a verdict wherein it found Union Pacific and Mr Krig without fault in causing the accident sued upon The trial court signed a judgment to this effect on *4 May 2, 2000

On May 3, 2000, the plaintiffs filed a motion for judgment notwithstanding the verdict (JNOV), and in the alternative, a motion for new trial Both motions asserted that the trial court erred in not including the proposed jury instructions objected to after the charge conference and in not allowing the jury to even consider their cause of action for the defendants' alleged failure to preserve evidence At a June 1, 2000 hearing on the motions, the trial court again expressed its dissatisfaction with the situation regarding the jury instructions, denied the motion for JNOV, and granted the motion for new trial

Union Pacific and Mr Krig timely applied to this court for a supervisory writ, seeking reversal of the trial court's decision to grant a new trial In an unpublished opinion, this court denied that application, finding no abuse of discretion on the part of the trial court based on the limited record before us at that time *Johnson v Missouri Pacific R R Co*, 00-0980 (La App 3 Cir 8/11/00) The defendants then filed an application for supervisory writ to the supreme court The supreme court responded to that application by remanding the matter to this court for briefing, argument, and rendering of an opinion *Johnson v Missouri Pacific R R. Co*, 00-2611 (La 11/27/00), 774 So 2d 987 In response to the supreme court's instructions, this court ordered the production **896 of a complete record of the proceedings in the trial court We now have a complete record for our review

## OPINION

[1] The exercise of supervisory jurisdiction by an appellate court is within its plenary power La Const art V, § 10 Appellate courts generally will not exercise such jurisdiction unless an error in the trial court's ruling will cause the petitioner *5 irreparable injury or an ordinary appeal does not afford an adequate remedy *Stevens v Patterson Menhaden Corp*, 191 So 2d 692 (La App 1 Cir 1966), *writs refused*, 250 La 5, 193 So 2d 524 (1967)

[2] The grant of a new trial may be based on either peremptory grounds or discretionary grounds La Code Civ P arts 1972 and 1973 It is the discretionary authority of the trial court that is at issue in this litigation "A new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law " La Code Civ P art 1973 "A trial court has virtually unlimited discretion to grant a new trial when it is convinced that a miscarriage of justice has resulted, and, unless an abuse of discretion can be demonstrated, a trial court's action in granting or denying a new trial on discretionary grounds will not be reversed " *Heritage Worldwide, Inc v Jimmy Swaggart Ministries*, 95-0484, p 3 (La App 1 Cir 11/16/95), 665 So 2d 523, 526, *writ denied*, 96-0415 (La 3/29/96), 670 So 2d 1233 *See also, Watson v Nelson*, 97-474 (La App 3 Cir 10/29/97), 702 So 2d 1002, *writ denied*, 97-2958 (La 2/6/98), 709 So 2d 738 Still, "the discretionary power to grant a new trial must be exercised with considerable caution, for a successful litigant is entitled to the benefits of a favorable jury verdict " *Burns v Wal-Mart Stores, Inc*, 940921, p 6 (La App 1 Cir 3/3/95), 652 So 2d 558, 561, *writ denied*, 95-0858 (La 5/12/95), 654 So 2d 352

At the hearing after the jury retired to deliberate, the plaintiffs objected to the exclusion of seventeen of their proposed jury instructions as well as the trial court's refusal to even list the cause of action for the

defendants' alleged failure to preserve evidence. The defendants also objected to the exclusion of four of their special jury instructions, but obviously that decision is not at issue before this court since the ***6** defendants were the beneficiaries of a favorable jury verdict.

The defendants' principal argument is that the trial court abused its discretion in granting the motion for new trial in that it did so without articulating which specific proposed jury instructions it felt were erroneously excluded from the jury charge. Further, the defendants argue that the trial court did not state that it disagreed with the verdict or that the failure to give the proposed jury instructions resulted in a miscarriage of justice.

At the June 1, 2000 hearing, the trial court granted the motion for new trial and, in doing so, reiterated its concern over the misunderstanding at trial relating to how the jury instruction objections were to be handled.

> The Court has reviewed everything. In all candor, the Court was extremely unhappy after I had charged the jury. I know that both attorneys remember. After I had charged the jury and both plaintiff and the defense started putting on their objections to my charge, and the reason for my unhappiness was what I thought were clear instructions, but evidently they were not so clear. I had informed counsel for plaintiff and defense to get together. I believe that it was a year ago this weekend or last weekend, maybe. To get together and try to work through as many of the **\*\*897** disagreements as to what the charge should include based on the charges which were on both sides of the case boiler plate jury charges and told them to try to work through the disagreements and give to me a charge which they could both agree on. However, noting to me which charges they were in disagreement with so that I could rule prior to charging the jury. However, because of a misunderstanding, that was not done. The Court has reviewed its charge and the Court finds that the jury was not properly charged in this matter. Therefore, the jury's deliberations were tainted, since they were not based on full instruction. Accordingly, the Court is going to grant the motion for new trial.

When questioned concerning exactly which charges were inappropriate, the trial court made the following comments:

> I reviewed the charge and I feel that it was so lacking in–I don't want to go into all of the particulars and maybe they'll send it back to me to do that at a later date. But I felt that it was so lacking that it prevented the jury from doing a meaningful deliberation. And I did that **\*7** simply because I felt that [you] had agreed on the charge with the exception of one or two that we had discussed in chambers. I guess that I said that I was not going to include them. And then Ms. Hardy put them on the record and then kept going. And I was like, "Wait a minute. I thought that we only had one or two instructions."

The trial court went on to say that "I find that probably half of them should have been included, but I thought that [you] had worked it out and said, 'Okay I will not ask the judge to include this one if you don't ask him to include that one.'" In summarizing all of the problems, the trial court made the following comment:

> There was just an inexcusable lack of communication and I guess the buck stops with me in that regard. And I guess you can relay to respective clients that I accept full accountability for what happened because evidently my communication was so lacking that neither one of you understood it. And now that will just result in all of us having to go through a lot more effort and expense in order to try the case again.

The trial court stated that it should have recalled the jury, taken time to organize the jury instructions properly, and recharge the jury. It concluded that its "vanilla charge" was not sufficiently detailed for the evidence presented.

[3] We do not agree with the defendants that the trial court must specifically declare that there has been a miscarriage of justice to grant a new trial pursuant to La Code Civ P art 1973. "However, it is necessary for the trial judge to state an articulable reason or reasons as to why he is exercising his discretionary powers." *Burris*, 652 So 2d at 561.

[4] In the instant case, the trial court stated that the charges given to the jury were so lacking that they tainted the deliberations and prevented the jury from conducting meaningful deliberations. While the trial court did not particularize which of the proposed instructions should have been included, we do not find such particularization necessary when, as in this case, the trial court recognizes that its "vanilla charge" was not sufficiently detailed to ensure justice to the litigants. If the **\*8** jury instructions were not sufficient to allow the jury to conduct meaningful deliberations, then clearly the defective charge in general impacted the conclusions reached by the jury.

Copr © West 2002 No Claim to Orig U S Govt Works

792 So 2d 892                                                                                                                   Page 5
(Cite as: 2001-0980 (La App. 3 Cir. 7/25/01), *8, 792 So.2d 892, **897)

in reaching its verdict A review of the trial record reflects that the liability issues were both complicated and fact intensive We must agree with **898 the trial court that, while the jury instructions given were accurate, a number of the more specific jury instructions offered by both the plaintiffs and defendants would have assisted the jury in its deliberations

[5] Equally damaging to the jury's ability to consider all the issues presented was the trial court's failure to allow it to consider the plaintiffs' cause of action for the defendants' alleged failure to preserve evidence As pointed out in *Guillory v Dillard's Dep't Store, Inc*, 00-190, p 4 (La App 3 Cir 10/12/00), 777 So 2d 1, 3, "our jurisprudence has recognized a person's right to a cause of action for the tort of impairment of a civil claim " Additionally, "[i]n some cases, when a plaintiff claims that the ability to institute or prove a civil claim has been impaired due to the negligent or intentional spoliation of evidence by another, courts have addressed the causes of action for impairment of a civil claim and spoliation of evidence as one " *Id* at 4

The plaintiffs specifically asserted that the defendants' failure to preserve evidence in their possession impacted their ability to prove liability, and the record contains a factual basis for that assertion Less than one month after the accident, the plaintiffs filed suit and began the discovery process Included within the discovery requests were requests that specific items of evidence be preserved Additionally, on January 30, 1997, the _____ counsel wrote Ronald J Fiorenza, an Alexandria, Louisiana attorney who often represented Union Pacific, and requested that certain *9 items of evidence be preserved Fiorenza forwarded the letter to Union Pacific's general counsel

The record establishes that railroad companies are required to maintain certain instruments in their locomotives or on their tracks for the purpose of recording particular forms of data during the operation of the train Each locomotive is to have an operating event recorder which provides such information as train speed, direction of travel, time, distance, and horn operation Additionally, audio tape recorders preserve the conversations that transpire internally between the members of the crew as well as between the crew and the company dispatcher Repair, inspection, and accident reports preserve information which would obviously be helpful in confirming or rejecting conflicts in oral testimony

Despite the repeated requests for preservation and demands for production, Union Pacific failed to produce any of this evidence

Given the fact that train speed, action or inaction of the train crew, emergency sight distances, and horn operation were all factual disputes critical to the question of liability, a trier of fact could easily conclude that Union Pacific negligently or intentionally failed to preserve this evidence to the detriment of the plaintiffs The conflicting responses to discovery give credence to this argument as well Initially, Union Pacific responded to the plaintiffs' discovery requests by asserting that the event recorder did not exist Later, that response was changed to suggest that, although the event recorder was on the train, no employee present at the accident scene could download the data recorded

The testimony of the various railroad officials and employees concerning knowledge of the plaintiffs' requests that the evidence be preserved is suspect, *10 particularly when one considers that the documents important to Union Pacific's defense seemed to always be available Union Pacific's explanation for its failure to produce the evidence ranged from complaints concerning the volume of discovery requests to its difficulties in keeping records because of an ongoing merger with another railroad at the time Hugh McGehee, Union Pacific's senior claims representative, **899 testified that even where a train had been involved in an accident, maintenance reports would have only been kept thirty days, and all of the other requested data would have been kept no more than 120 days

At a bench conference held outside the hearing of the jury, the trial court expressed its concern with the defendants' inability to produce the requested evidence The trial court stated that "it's becoming more and more obvious to the Court that either the railroad is actively engaging in behavior to prevent the discovery of certain evidence or the record keeping is so lacking that it almost rises to the level (interrupted) "

## DISPOSITION

Reviewing the record as a whole, we cannot say that the trial court abused its vast discretion in granting the new trial Therefore, we deny the defendants' application for supervisory writs We tax all costs of these proceedings to Union Pacific Railroad Company and Nathan Krig

Copr © West 2002 No Claim to Orig U S Govt Works

792 So.2d 892  
(Cite as: 2001-0980 (La.App. 3 Cir. 7/25/01), *10, 792 So.2d 892, **899 )

Page 6

**WRIT DENIED.**

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works